**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **BRANDON DUNN, individually and** | § | |
| **as Administrator of the Estate of** | § | |
| **HALEY DUNN, deceased,** | § | |
| **BILLIE JO DUNN, individually and** | § | |
| **as next friend of LARAMIE  DUNN,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **Civil Action No.  7:05-CV-041-R** |
| | § | |
| **VERONICA MADERA ,** | § | |
| **JOHN BROOKS in his capacity as** | § | |
| **Administrator of the Estate of** | § | |
| **ERIC CAIN, deceased,** | § | |
| **and ENTERPRISE LEASING** | § | |
| **COMPANY OF DENVER, a Colorado** | § | |
| **corporation,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court are Defendant Enterprise Leasing Company's Motion for Summary

Judgment (Dkt. No. 39) and Defendant Veronica Madera's Motion for Summary Judgment (Dkt.

No. 38).  For the reasons explained below, the Court **GRANTS** Defendant Enterprise Leasing

Company's Motion for Summary Judgment and **GRANTS** Defendant Veronica Madera's Motion

for Summary Judgment.

## I.  Background

In April 2003, Eric Cain, a Colorado resident, asked his best friend's wife, Veronica Madera,

to help him rent a vehicle that he could drive to visit his daughters in Corpus Christi, Texas. Cain

did not have a credit card.  He needed someone to put the deposit for the rental car on a credit card

1

(Dkt. No. 38, App. B, p. 68) because one is needed to take a car out of state. (Dkt. No. 38, App. A, p. 81).  He did have a valid Colorado driver's license.  (Dkt. No. 38, App. B, p. 87).  At the time, Madera had already used her credit card to rent vehicles for Cain on two prior occasions, each without incident.  (Dkt. No. 38, App. B, p. 67).

On April 14, 2003, Madera rented a vehicle from an Enterprise Leasing Company (Enterprise) branch location in Denver.  Madera informed Enterprise's branch manager, Brian Hansen, to add Cain as a secondary driver on the rental contract, that Cain would be the only driver, and that Cain was taking the car to Texas.  (Dkt. No. 38, App. A, p.  20).  At the time, Madera was unaware that Cain did not have insurance (Dkt. No. 38, App. B, p. 98) and she had no knowledge of Cain's driving record.  (Dkt. No. 38, App. B, p. 101).

After taking Madera's credit card and license and Cain's license, Hansen, the Enterprise agent,  indicated on the rental form that the car was "OK to Texas."  (Dkt. No. 38, App. A, p. 79-80). Hansen discussed all of the Enterprise coverages with Madera, including the supplemental liability insurance.  (Dkt. No. 38, App. A, p. 76).  Madera opted to pay for the damage waiver, but declined coverage under a $1,000,000 supplemental liability policy. (Dkt. No. 38, App. B,  p. 88).  Later in the evening, Cain arrived at the Enterprise office, presented his driver's license to Hansen, and took possession of the vehicle. (Dkt. No. 38, App. B, pgs. 66).

On the evening of April 15th, the Dunn family – Brandon, Bobbie Jo, and their daughters Haley and Laramie  – were traveling east on Highway 79 as they returned home from buying groceries at a Wal-Mart store in Wichita Falls, Texas.  Brandon and Bobbie Jo were sitting in the front seats of their vehicle, and the girls were seated in the back seat.  (Dkt. No. 38, App. A, Accident Report).  Outside of Dean, Texas, Cain was driving west on Highway 79 when he crossed

the center line and attempted to pass another vehicle in a no-passing zone.  (Dkt. No. 38, App. A, Accident Report).  The two cars collided head-on, killing Cain and Haley Dunn, the Dunn's oldest daughter.  (Dkt. No. 38, App. C).  The surviving members of the Dunn family suffered severe injuries and were extensively hospitalized and rehabilitated for months after the accident.  (Dkt. No. 38, App. D and E).  The autopsy report revealed that Cain's blood alcohol concentration was 0.18 and that he tested positive for cannabis. (Dkt. No. 38, App. F).

Haley's parents, Brandon and Billie Jo Dunn, and their minor surviving daughter, Laramie, have brought this lawsuit against Madera, Enterprise, and the legal representative of Cain's estate seeking compensation for their injuries. (Dkt. No. 1, p. 1).  In addition, Brandon and Billie Jo Dunn have brought a claim for damages for the wrongful death of Haley Dunn, and a survival claim for the personal injuries to Haley Dunn.  (Dkt. No. 1, p. 10-11).  Plaintiffs allege that Defendant Madera negligently entrusted the rental car to Cain and breached a duty of care because Cain was uninsured when she rented the car from Enterprise. (Dkt. No. 1, p. 4).   Plaintiffs allege that Defendant Enterprise (1) failed to verify or confirm that Eric Cain was a covered person under Veronica Madera's insurance policy, (2) failed to investigate Cain's driving record, and (3) failed to follow the safety responsibility laws of the State of Texas by failing to maintain insurance on its rental vehicle.  (Dkt. No. 1, p. 4-5).

Madera (Dkt. No. 38, Tab A)  and Enterprise (Dkt. No. 39, Tab A) have each moved for summary judgment as a matter of law.  Plaintiffs responded and claim that there are genuine issues of material fact and requested declaratory relief.  (Dkt. No. 38 Tab C and No. 39, Tab B).

## II.  Analysis

### A.      Summary Judgment Standard

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed 'to secure just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1).  Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure is appropriate when there is no genuine issue as to any material fact in the case and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp.,* 477 U.S. at 322; *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Calbillo v. Cavender Oldsmobile,* 288 F.3d 721, 725 (5th Cir. 2002). Where the nonmovant bears the burden of proof on a claim upon which summary judgment is sought, the movant may also discharge its initial burden by showing that there is an absence of evidence to support the nonmoving party's case.  *See Celotex*, 477 U.S. at 325.  Once the movant has met its initial burden, the nonmovant must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  "If the evidence [proffered by the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 2549-50

4

(1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  *See id.* at 255.

### B.      Choice of Law

In diversity cases, a federal district court applies the substantive law of the state in which it sits, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), which includes the forum state's choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  To resolve choice of law questions in tort cases, both Texas and Colorado courts apply the "most significant relationship test" of the Restatement (Second) of Conflict of Laws §145.  *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-21 (Tex. 1984) (citing Restatement (Second) Conflict of Laws §§ 6 and 145 (1971)); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 704-05 (5th Cir. 1999); *First Nat'l Bank v. Rostek*, 514 P.2d 314, 320 (Colo. 1973) (en banc).

To determine the appropriate law applicable to this case, the Court must rely on *Cates v. Creamer*.  431 F.3d 456 (5th Cir. 2005).  *Cates* first appeared before this Court presenting a choice of law issue between Texas and Florida on a vicarious liability issue originating from a car accident in Texas.  This Court applied Texas law.  The Fifth Circuit reversed this Court's decision and concluded that Florida law, not Texas law, was applicable to the issue of vicarious liability. Therefore, this Court must follow the analysis and reasoning set out in *Cates v. Creamer* to resolve the issue  in this case.  In *Cates*, the Creamers, Florida residents, rented a mini-van from Hertz Corporation in Florida for a family reunion in Texas.  *See id.* at 459.  The couple told the Hertz representative that they were going to drive straight through over night, but would alternate drivers. *Id.*  Mr. Creamer drove the first eight hours to New Orleans, Louisiana, where Mrs. Creamer began her shift.  *Id.*  She drove the mini-van into Texas, while Mr. Creamer slept.  *Id.*  Mr. Creamer woke

up at daybreak and began to drive again. *Id.* Mr. Cates was on the side of the road because his car had stalled. *Id.* Mr. Creamer fell asleep at the wheel and his vehicle hit Mr. Cates, projecting him into the roadway and causing serious head injuries. *Id.*

Mr. Cates's wife sued the Creamers under Texas law for negligent operation of a motor vehicle seeking lost wages and medical expenses. *Id.* Ms. Cates also brought suit again Hertz Corporation under the Florida dangerous instrumentality doctrine. *Id.*

Because the facts and the issue presented in *Cates* are so similar to the present case, the analysis and reasoning used by the Fifth Circuit to resolve the issue is paramount to this Court's decision. The Fifth Circuit concluded that Florida's dangerous instrumentality doctrine was the appropriate law to apply to the vicarious liability of Hertz Corporation. *See id.* at 466. First, the Fifth Circuit found that the conflicts of law analysis in the case should focus on the specific issue of vicarious liability and not general tort negligence. *See id.* at 463. As § 145 states, the most significant relationship to a particular issue in tort determines the applicable law. The Fifth Circuit concluded that Florida law applied to the vicarious liability issue because the rental agreement was "an adequate basis for the imposition of vicarious liability against Hertz and that Hertz had a reasonable relationship with the state of Florida." *Id.* at 464.

After the Fifth Circuit determined that Florida law was applicable to the specific issue of vicarious liability, it continued its analysis using § 145. The Fifth Circuit evaluated the relevant factors set out in § 145, including: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Torts § 145 (1965). Focusing on those facts relevant

to the particular issue, the Fifth Circuit concluded that the most relevant factor was the place where the relationship between the parties is centered. *See id.* at 465.   In *Cates*, the most important relationship in that case was the car rental agreement, which was signed in Florida between Florida residents and Hertz. *See id.*  Therefore, Florida had the most significant relationship to the vicarious liability issue because Texas had no relationship to the lease and Hertz did not have any relationship to Texas based on this lease. *See id.*  The next step in the analysis examined the factors stated in § 145 under § 6, which balances the relative interests of the states involved relevant to the vicarious liability issue.  The Fifth Circuit concluded that both states had minimal interest in having its law applied to the vicarious liability issue because Mr. Cates was not a Florida resident, Hertz is not a Texas corporation, and the rental agreement was signed in Florida. *See id.*  Because neither states' interest predominated, the Fifth Circuit relied upon its analysis under § 145.  As a result, the Fifth Circuit instructed this Court to apply Florida law to the vicarious liability issue and make an *Erie* guess to determine whether Florida's dangerous instrumentality doctrine can be used to benefit non-Florida residents, such as the Cates. *See id.*

Section 145 directs that the law of the state with the most significant relationship to the *particular issue* in tort should govern that issue, Restatement (Second) Conflict of Laws § 145(1), and " the law of the state with the most significant contacts to the underlying tort must be applied." *Ede v. Mueller Pump Co.*, 652 F. Supp. 656, 659 (D. Colo. 1987) (citing *First Nat'l Bank,* 514 P.2d at 320).  Comment a of § 145 states that §§ 146-155 "deal with particular torts as to which it is possible to state rules of greater precision."  This comment concludes that "the best way to bring precision into the field is by attempting to state special rules for particular torts and for particular issues in tort." *Id.*  The particular issues in tort involved in this case are the personal injuries arising

7

out of alleged negligent entrustment and general negligence.

The Court therefore turns to § 146, which states that the local law of the states where the injury occurred determines the rights and liabilities of the parties, unless some other state, "with respect to the particular issue," has a more significant relationship "under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) Conflict of Laws § 146. Under the principles provided in § 6, the Court is required to engage in an analysis of the relative interests of the respective states.  *See Cates,* 431 F.3d at 465.   Contacts considered when applying § 6 include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."   Restatement (Second) Conflict of Laws § 145(2).

The Court now must determine whether Texas or Colorado law applies under §§145 - 146. Here, the victims lived in Texas and the accident took place in Texas; however, Madera and the Enterprise office involved are in Colorado. "That both the injury and the conduct causing the injury occurred in Texas would weigh heavily in favor of applying Texas law...[b]ut those contacts are less important in determining which state's law should apply to the issue of Hertz's vicarious liability." *Cates,* 431 F.3d at 464-65; *see also Erickson v. Hertz Corp*., 2006 WL 1004385 *4 (D. Minn. April 17, 2006) (citing *Cates*, 431 F.3d at 465). In *Cates,* the Fifth Circuit determined that Florida had the most significant relationship regarding Hertz's vicarious liability, despite the fact that both the accident and the victims were in Texas. *Id.* The Court found that "the place where the relationship of the parties is centered" was the most relevant factor to Hertz's vicarious liability, and in *Cates,*

the "most relevant relationship is that which arises from the lease of the automobile." *Id.*

Similar to the facts in *Cates*, neither Madera nor Enterprise have a relationship with the Plaintiffs or Texas. Madera signed the Enterprise motor vehicle rental agreement in Denver, Colorado, not Texas. Madera lives in Colorado and has a Colorado driver's license. Based on the analysis in *Cates*, given that the parties to the lease are Colorado residents and the car was actually leased in Colorado, Colorado has the most significant relationship to the issue of Enterprise's and Madera's liability.

The next step of the analysis is under §6 and compares "the relative interests of the respective states." *Cates,* 431 F.3d at 465. The Fifth Circuit in *Cates* concluded that neither Florida nor Texas had an overwhelming interest because the rental company was not a Texas corporation and it did not enter into the rental agreement in Texas. *Id.*

The present case is strikingly similar to *Cates*. Enterprise is not a Texas corporation and the rental agreement was signed in Colorado. Additionally, although the victims are Texas residents, Madera and Cain are residents of Colorado and the Enterprise office was located in Colorado. Also, Florida law protects Florida residents and the victims were Texan residents. *Id.*

Likewise, the Colorado Court of Appeals used the same reasoning in a choice of law case involving a negligent entrustment case. In *Murphy v. Colorado Aviation, Inc.*, Audie Murphy was killed in a plane crash, and his widow and two sons sued claiming negligence on the part of the defendant's pilot. 588 P.2d 877, 879 (Colo. Ct. App. 1978). The Colorado Court of Appeals determined that the state in which the aircraft was hangered and the place where the pilot was first entrusted had a stronger interest than any other state. *Id.* at 880. In deciding between three states, the court weighed the following factors: Murphy and his family were residents of California, the

9

accident occurred in Virginia, the aircraft was registered and hangered in Colorado, and the pilot was first entrusted in Colorado. *Id.* Ultimately, the court applied Colorado law because under the most significant relationship test, Colorado's interest to prevent domestic corporations from negligently entrusting planes to pilots without the appropriate flight training outweighed Virginia's *only* interest that the accident occurred there. *Id.* (emphasis added).

As in *Cates,* the analysis under § 145 is persuasive and Colorado "clearly has the greater connection to the facts and circumstances as they relate to the vicarious liability issue." *Id.* at 465-66. Therefore, the Court finds that Colorado law, not Texas law, applies to the present case.

### C.    Colorado Law

### 1.    Enterprise Owes No Duty

Under Colorado law, rental car companies do not have a duty to even offer insurance coverage to uninsured or underinsured motorists. The case law that would have supported the Plaintiffs' claims against Enterprise has been overturned by statute. In *Passamano v. Travelers Indemnity Co.*, Passamano signed an agreement with North-West, a rental car company in Vail, Colorado, containing provisions for a collision damage waiver as well as personal accident insurance. 882 P.2d 1312, 1314 (Colo. 1994). Passamano argued that the agreement with North-West made North-West the insurer and therefore it was required to offer him uninsured motorist coverage. *Id.* at 1317. The Colorado Supreme Court determined that North-West was the insurer and subject to the state regulations regarding insurance policies. *Id.* at 1318. The Court said that it was Passamano's right to acquire or reject uninsured motorist coverage and not the insurance company's right. *Id.* However, this case has been effectively overturned by statute. *See* C.R.S.A. §§ 10-4-102, 10-4-601(2), 10-4-608 and 10-4-609(1). Section 10-4-102 authorizes the state's

10

insurance commissioner to create  and adopt regulations for the state.  Section 10-4-601(2) defines a complying policy under state law to be "a policy of insurance that provides the coverages and is subject to the terms and conditions required by this part 6, and . . . conforms to Colorado law and any rules promulgated by the commissioner."  Under the exemptions listed in Section 10-4-608 (c ) motor vehicle rental agreements are specifically excluded from the state's regulation of car insurance.  Also, Section 10-4-609(1)(a)  requires automobile and motor vehicle liability policies to include coverage for bodily injury or death to protect uninsured motorists, however, (1)(b) states "[t]his subsection (1) shall not apply to motor vehicle rental agreements or motor vehicle rental companies."  C.R.S.A. § 10-4-609(1)(b).

Based on the relevant Colorado statutory language, rental car companies are not required to even offer supplemental liability insurance to cover uninsured or underinsured motorists.  Therefore, this Court finds no support for Plaintiffs' contention that Enterprise was required to offer Madera or Cain a supplemental insurance policy.[1]  In the present case Enterprise did offer the supplemental liability coverage and the disclaimer waiver.  But the fact that Enterprise did not require Cain or Madera to purchase the supplemental liability coverage is insignificant because Enterprise was not

---

[1]This Court rejects Plaintiffs' argument that under Texas law the Enterprise office in Colorado was required to verify Cain's insurance or require him to pay for the supplemental liability insurance.  Plaintiffs claim that liability arises from a statutory duty, but Texas courts have generally held that "additional duties should not be imposed on a defendant lending a vehicle to another beyond those duties recognized in a negligent entrustment claim."  *Avalos v. Brown Auto. Ctr., Inc.,* 63 S.W.3d 42, 48 (Tex. App. - San Antonio 2001, writ denied).  In fact, "[a]s long as the defendant does not entrust a vehicle to a driver that the defendant knows or should know is incompetent or reckless, the risk, foreseeability and likelihood of the driver causing injury to others is outweighed by the social value of having rental cars available and the consequences of requiring those who lend cars to develop standards to eliminate any possibility that someone seeking to borrow a car might be involved in an accident."  *Id.*; *see Praesel v. Johnson*, 967 S.W.2d 391, 397 (Tex. 1998).  Therefore even under Texas law, Plaintiffs have failed to demonstrate a violation of a statutory duty and negligent entrustment.

11

required to do so. Creating a duty specifically requiring rental car companies to require purchase of supplemental liability insurance when a renter is uninsured is best addressed by the legislatures of the various states. The Colorado legislature has not imposed such a duty, and this Court refuses to overstep its bounds by creating one here. Therefore, Plaintiffs fail to establish liability against Enterprise under Colorado law.

### 2.      Negligence claims against Enterprise

Plaintiffs allege that Enterprise negligently permitted Madera and Cain to opt out of purchasing supplemental liability insurance. "To obtain submittal of a negligence claim to a jury, the plaintiff must establish a prima facie case demonstrating the following elements: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury." *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1015 (Colo. 2006). *See Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005); *Ryder v. Mitchell*, 54 P.3d 885, 889. (Colo. 2002); *see generally*, Restatement (Second) of Torts § 281 (1965).

The first element of a negligence claim depends on the existence of a legal duty.[2] According to Colorado law, a rental company is not required to even offer uninsured motorist coverage. If there is no requirement to even offer the coverage, there can be no failure to require Madera and Cain to purchase the supplemental liability insurance. There is no duty to require the purchase of supplemental liability insurance coverage for uninsured motorists because Colorado law specifically

---

[2]Under Texas law, the requirements for negligence are the same as those used in Colorado. This Court notes that Plaintiffs have failed to establish the first element under Texas law because there is no legal duty at issue. Plaintiffs even admit that under Texas law, there is not a "common law duty not to entrust a vehicle to an uninsured driver." (Dkt. No. 38, Tab C, p. 24).

exempts rental companies from this requirement.  Therefore, Plaintiffs have failed to establish a duty under Colorado law and cannot establish a negligence claim against Enterprise.

### 3.        Negligent Entrustment Against Madera

Plaintiffs argue that Madera negligently entrusted the rental car to Cain.  Generally "there is no duty to prevent a third person from harming another, absent a special relation between the actor and the wrongdoer or between the actor and the victim." *Leake v. Cain*, 720 P.2d 152, 160 (Colo. 1986) (en banc) (citing Restatement (Second) of Torts § 315 (1965)).  "The doctrine of negligent entrustment provides a framework for resolution of the issue of duty, and also identifies criteria for assessing exercise of reasonable care in light of the apparent risk under particular circumstances." *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo. 1992).  The Colorado Supreme Court did "confirm that the doctrine of negligent entrustment is part of the law of negligence in this state [and] § 308 of the Restatement provides guidance for our use in determining the applicability and scope of the doctrine." *Id.* at 357.[3]  Section 308 says "[i]t is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."  Restatement (Second) of Torts § 308 (1965).  Sections 308 and 309 are only satisfied if "the risk of harm resulting from the entrustment can be characterized as 'unreasonable.'" *Casebolt*, 829 P.2d at 357 (citing *Butcher v. Cordova*, 728

---

[3]Under Texas law, to establish a negligent entrustment claim, Plaintiffs must show "(1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver;  (3) that the owner knew or should have known to be unlicensed, (4) that the driver was negligent on the occasion in question, and (5) that the driver's negligence proximately caused the accident." *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987) (citing *Williams v. Steve's Indus., Inc.*, 699 S.W.2d 570, 571 (Tex. 1985)).

13

P.2d 388, 391 ( Colo. Ct. App. 1986)). "The risk presented by the entrustment, or the continuation of an entrustment, of a vehicle to a person likely to drive it while inebriated is an unreasonable one under section 390 of the Restatement." *Id.* at 362.

"The fundamental element that pervades these cases is that the entrustor must have 'actual knowledge' of the individual's recklessness or incompetence or of facts from which such knowledge could reasonably be inferred."[4] *Baker v. Bratrsovsky*, 689 P.2d 722, 723 (Colo. Ct. App. 1984). In *Baker*, the plaintiffs failed to present evidence that the defendant had actual knowledge of Scheibel's driving record and it was in fact admitted that Bratrsovsky had no actual knowledge. *Id.* Scheibel arranged an exchange with Bratrsovksy, a used car salesman, of his inoperable Chevrolet and a Chevrolet engine for a Pontiac. *Id.* Two months after Scheibel acquired the Pontiac from Bratrsovksy, he collided head on with a killing its young passengers. *Id.* The Colorado Court relied upon the reasoning in a Georgia case and agreed that "when the liability of the defendant entrustor is premised upon the driver's pattern of recklessness, the evidence in support of the imposition of such liability must show that the defendant-entrustor had actual knowledge of *the pattern* upon which the injured party relies as demonstrating the driver's incompetency." *Id.* (quoting *Thomason v. Harper*, 289 S.E.2d 773, 779 (Ga. Ct. App. 1982)). The Colorado Court of Appeals upheld the directed verdict in favor of Bratrsovsky because he " had no actual knowledge of, nor any reason

---

[4]As in Colorado, under Texas law, "[k]nowledge of the driver's incompetency when the owner gives consent is an essential element of a negligent entrustment action." *Monroe v. Grider*, 884 S.W.2d 811, 815 (Tex.App. - Dallas 1994, writ denied) (citing *Briseno v. Martin*, 561 S.W.2d 794, 795 n.1 (Tex. 1977)). The fact that Madera knew about Cain's blown transmission is insufficient proof because "[i]nvolvement in a previous collision alone does not create an inference or conclusion that a driver is incompetent or reckless." *Id.* Thus, even under Texas law, Plaintiffs have failed to establish a negligent entrustment claim against Madera because there is no evidence that she knew about his driving record or that he was a reckless or incompetent driver.

or duty to investigate, Scheibel's competency as a driver." *Id.* at 724.  The knowledge element of negligent entrustment is significant to the present case.  In *Casebolt*, the Colorado Supreme Court stated that for the plaintiffs to win, they "must establish that Cowan knew or had reason to know that Casebolt would be *likely* to use the vehicle in a manner involving unreasonable risk of physical harm to himself." *Casebolt*, 829 P.2d at 326.  *See* Restatement (Second) of Torts § 390 (1965).  The factors useful to this determination are: patterns of continuous drinking, propensity for driving while inebriated, the amount of alcohol consumed, and the extent of Cowan's knowledge at the time.  *See id.* at 326.

Plaintiffs state in their complaint that Madera contracted to rent a vehicle for Cain and that she permitted him to drive without insurance.  (Dkt. No. 38, Tab C, p. 23).  Plaintiffs assume that because Madera knew Cain and that he was her husband's friend, that she had extensive knowledge about Cain.  Plaintiff states that Madera should have asked Cain about his insurance status and his driving record given that she knew that the transmission on his truck blew out while he was driving in inclement weather and because she had rented him a car on two prior occasions.  Based on these examples, Plaintiffs claim that Madera should have asked Cain about his insurance and driving history.

Plaintiffs would have to present evidence that Madera knew or should have known that Cain "would be *likely* to use the vehicle in a manner involving unreasonable risk of physical harm to himself." *Casebolt*, 829 P.2d at 326.  *See* Restatement (Second) of Torts § 390 (1965).  However, Madera stated in her deposition that she did not have any knowledge of Cain's prior driving record the day she rented the car for Cain.  (Dkt. No. 38, App. B, p. 102).  Also, Madera stated that she never specifically asked Cain about his insurance coverage and he never mentioned to her that he

did not have any insurance.  (Dkt. No. 38, App. B, p. 98).  The general rule does not impose liability on third parties, unless there is an unreasonable risk *and* actual knowledge.  Madera did not know that Cain would drink and drive.  She did know he was going to use the car to visit his daughters in Texas for Easter.  (Dkt. No.38, App. B, p. 83), and she had rented cars for him on two previous occasions (Dkt. No. 38, App. B, p. 67) without incident.  The facts presented do not support a conclusion that Madera knew or should have known that Cain would drink and drive or that he did not have insurance.  The fact that he was her husband's friend does not create an assumption that Madera had extensive knowledge about Cain.  Plaintiffs have failed to show any evidence that Madera knew or should have known anything about Cain's driving record.  Furthermore, Plaintiffs have presented no evidence showing that Madera had any knowledge of Cain's drinking habits or that Cain had a history of drunk driving.  Therefore, Plaintiffs have failed to show that Madera negligently entrusted Cain with the rental car.

### 4. Negligence Claims against Madera

Plaintiffs further allege negligence claims against Madera.[5]  The Colorado Supreme Court uses "the following factors in considering whether to impose an actionable common law duty on a defendant who fails to prevent a third person from harming another: (1) the existence of a special

---

[5]As stated earlier, Plaintiffs admit that absent from the common law is a duty to not entrust a vehicle to an uninsured driver.  (Dkt. No. 38, Tab C, p. 24). To impose a new common law duty under Texas law, courts consider "'social, economic, and political questions,' and their application to the particular facts at hand."  *Mitchell v. Missouri-Kansas-Texas R. Co.*, 786 S.W.2d 659, 662 (Tex. 1990)(quoting 1 *Texas Torts and Remedies* § 1.03[2] at 1-22  (1989)).  Other relevant factors under Texas law include: "the extent of the risk involved, 'the foreseeability and likelihood of injury, the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.'"  *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).  Plaintiffs have presented no evidence that Madera knew or had any reason to believe that Cain would drink and drive.  Therefore, even under Texas law, Plaintiffs have failed to show that Madera was negligent.

relationship between the parties; (2) foreseeability of harm to others; (3) the social utility of the defendant's conduct; (4) the magnitude of the burden of guarding against injury or harm; and (5) the practical consequences of placing a duty upon the defendant." *Davenport v. Comty. Corrs. of Pikes Peak Region, Inc.*, 962 P.2d 963, 967-68 (Colo. 1998). *See Perreira v. State*, 768 P.2d 1198, 1214-15 (Colo. 1989); *Taco Bell, Inc. v. Lannon*, 744 P.2d 963, 967-68 (Colo. 1987). "Whether a special relationship exists . . . depends in large part upon the level of control exercised." *Id.* at 968.

Cain was not under the control or supervision of Madera. She rented a car on behalf of Cain, told the rental company Cain would be the only one driving to Texas, and she remained in Colorado while Cain drove to Texas. (Dkt. No. 38, App. A, p. 20). The fact that she contracted with Enterprise to rent a car on his behalf is not sufficient to establish negligence on the part of Madera. Madera and Cain had no special relationship. Furthermore, Plaintiffs have failed to demonstrate through any of the factors that this Court should impose a common law duty upon Madera. Plaintiffs have failed to present any evidence to establish negligence on the part of Madera.

### D.   Declaratory Relief

Plaintiff has presented no evidence to support declaratory relief.

### III.  Conclusion

For the foregoing reasons, the Court enters the following rulings:

1. Defendant Enterprise Leasing Company's motion for summary judgment is

   **GRANTED.**

2. Defendant Madera's motion for summary judgment is **GRANTED**.

3. Plaintiff's request for declaratory relief is **DENIED**.


**IT IS SO ORDERED**


**ENTERED: December 18, 2006**

_____

**HON. JERRY BUCHMEYER**

**SENIOR UNITED STATES DISTRICT JUDGE**

**NORTHERN DISTRICT OF TEXAS**

18